IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELE M. BURNS | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 19-1647 |
| FORD MOTOR CREDIT | : |
| COMPANY LLC, ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                          **MAY 17, 2021**

In this action for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA"), Plaintiff alleges Ford Motor Credit Company LLC, as a "furnisher" of credit information, failed to conduct a reasonable investigation after it was notified by consumer reporting agencies of Plaintiff's dispute and, therefore, both negligently and willfully violated § 1681s-2(b).

Presently before the Court is Ford Motor's Motion for Summary Judgment. (ECF No. 39.) For the reasons that follow, Ford Motor's Motion will be denied.

**I.     BACKGROUND**

On February 10, 2017, Plaintiff's husband applied for and purchased a Ford truck from a Ford dealership in Conshohocken, Pennsylvania. (Scholl Decl. ¶ 5, ECF No. 39-2; Credit Appl., Scholl Decl. Ex. A.) Plaintiff's husband listed Plaintiff as co-applicant and co-buyer for the truck. (Credit Appl.) Plaintiff's husband executed the necessary documents by forging Plaintiff's signature. (*Id*.) Ford Motor approved the application, and the purchase was finalized as it was submitted. (Scholl Decl. ¶ 6.)

Plaintiff first became aware of the fraudulent account in October 2018 when Ford Motor notified her that her payment for the Ford truck was late. (Burns Dep. 11, Def. SJ Ex. 4.) Since

then, Plaintiff has persistently disputed the account with Ford Motor and the relevant consumer reporting agencies.

On February 11, 2019, Ford Motor received two identical letters from Plaintiff in which she explained that she never signed any loan documents and she never authorized anyone to sign or act on her behalf. (Scholl Decl. ¶ 7 & Ex. B.) Ford Motor responded to Plaintiff with information on how to file a claim for identity theft. (*Id*.) Ford Motor also received copies of the letters Plaintiff sent to the consumer reporting agencies that also outlined the nature of her dispute. (Pl.'s Opp. Ex. C-D, ECF No. 41.)

Shortly thereafter, Ford Motor received three Automated Credit Dispute Verifications ("ACDV") from three consumer reporting agencies—Equifax Information Services, LLC, Trans Union LLC, and Experian, Plc. When a consumer contacts a consumer reporting agency about a dispute, the agency transmits the disputed information to the furnisher of the credit information through an ACDV report.

The first report Ford Motor received came from Trans Union on February 13, 2019. (Pl.'s Opp. Ex. E.) The Trans Union ACDV contained two dispute codes. (*Id*.) The first code read "001: Not his/hers. Provide or confirm complete ID." (*Id*.) The second code read "111: Claims company will delete. Verify all Account Information." (*Id*.) The Trans Union ACDV also included details in a section labeled "FCRA Relevant Information," which read "Unable to authenticate documentation dated 02 10 2017." (*Id*.) Ford Motor assigned a dispute analyst to the Trans Union ACDV, who responded to Trans Union on February 22, 2019 confirming that the information on the account was accurate. (*Id*.) According to the report, the FCRA response date was March 10, 2019. (*Id*.)

The second report came from Experian on February 19, 2019. (Pl.'s Opp. Ex. G.) The Experian ACDV contained one dispute code that read "001: Not his/hers. Provide or confirm complete ID." (*Id*.) Ford Motor assigned a different dispute analyst to investigate. (*Id*.) The analyst responded to Experian on February 27, 2019 confirming that the information on the account was accurate. (*Id*.) According to the report, the FCRA response date was March 7, 2019. (*Id*.)

The third report came from Equifax on February 20, 2019. (Pl.'s Opp. Ex. H.) The Equifax ACDV contained the same dispute code. (*Id*.) It also included details in the section labeled "FCRA Relevant Information," which read "IMAGE ATTACHED." (*Id*.) Ford Motor assigned a different dispute analyst to the Equifax ACDV, who responded the following day confirming that the information on the account was accurate. (*Id*.) According to the report, the FCRA response date was March 8, 2019. (*Id*.)

In a letter dated February 21, 2019, Ford Motor explained to Plaintiff that in order for it to complete its investigation she must provide them with an affidavit, a police report, and a copy of her driver's license. (Pl.'s Opp. Ex. I.)

On February 28, 2019, after Ford Motor responded to each of the ACDV reports, Plaintiff's attorney contacted Ford Motor. (Scholl Decl. ¶ 16 & Ex. J.) Plaintiff's attorney requested that Ford Motor reconsider the findings it reported to the consumer credit reporting agencies. (*Id*.) Ford Motor responded to Plaintiff's attorney requesting the same information it requested from Plaintiff (i.e., an affidavit, a police report, and a copy of Plaintiff's driver's license). (*Id*.)

On March 13, 2019, Ford Motor sent a letter to Plaintiff acknowledging that the customer on the account was, in fact, her husband, Michael J. Burns, not Plaintiff, and that her current

balance on the account was $0.00. (Pl.'s Opp. Ex. L.) According to Plaintiff, Ford Motor never shared this information with any of the consumer reporting agencies. (Pl.'s Opp. Ex. Q.)

On March 19, 2019, Plaintiff sent Ford Motor a copy of the affidavit and a copy of her driver's license. (Pl.'s Opp. Ex. M.) She also indicated that the police report was filed, but she was unable to secure a copy. (*Id*.) Because Plaintiff did not provide a police report, Ford Motor did not investigate her claim and closed her dispute claim file. (Pl.'s Opp. Ex. N.) Plaintiff followed-up by reminding Ford Motor that it already had a copy of the affidavit. (Pl.'s Opp. Ex. P.) Plaintiff also included Ford Motor's March 13, 2019 letter indicating that she was not the customer on the account and that the account had no balance. (*Id*.) Meanwhile, the fraudulent account continued to appear on Plaintiff's credit reports. (Pl.'s Opp. Ex. Q.)

On April 17, 2019, Plaintiff filed this lawsuit. (Pl. Compl., ECF No. 1.)

On April 22, 2019, Plaintiff faxed to Ford Motor a copy of a criminal docket showing that criminal charges had been filed against Plaintiff's husband for forgery. (Pl.'s Opp. Ex. Q.) Ford Motor re-opened Plaintiff's dispute claim for investigation and, again, requested a copy of the police report, the affidavit, and Plaintiff's driver's license. (Scholl Decl. ¶ 21, Ex. M; Pl.'s Opp. Ex. R.)

On April 24th and 26th of 2019, Ford Motor received new ACDV reports from Equifax and Trans Union. (Scholl Decl. ¶ 22 & Exs. N, O.) This time, however, both reports contained a different code— "103: Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." (*Id*.) Ford Motor responded to both reports, verified the information, and, again, sent a letter to Plaintiff explaining how to open a claim for identity theft, per its internal policies and procedures. (Scholl Decl. ¶ 24.)

Finally, on May 8, 2019, Ford Motor validated Plaintiff's identity theft claim and submitted the information to the credit reporting agencies. (Pl.'s Opp. Ex. U.) Plaintiff's credit report reflected the update on May 10, 2020. (Scholl Decl. ¶ 25.)

During this time, Plaintiff was struggling to qualify for federally subsidized student loans for her children. According to Plaintiff, she suffered a higher interest rate as a result of Ford Motor's failure to investigate and resolve her dispute. (Pl.'s Opp. Ex. W.) Plaintiff also claims she suffered from physical stress, insomnia, fatigue, loss of function, including neck and back pain, which her treating doctor attributed, at least in part, to the "ongoing truck loan problems." (Pl.'s Opp. Ex. X.)

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When making this determination, we must weigh all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of the non-moving party. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018). "For its part, '[t]he non-moving party must oppose the motion and, in doing so, may not rest upon the mere allegations or denials of his pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Id*. at 288-89 (quoting *D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260, 268-69 (3d Cir. 2014)). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. at 289 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Conversely, 'where a non-moving party fails sufficiently to establish the existence of an essential element of its case on which it bears the burden of proof at

5

trial, there is not a genuine dispute with respect to a material fact and thus the moving party is entitled to judgment as a matter of law.'" *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)).

## IV. DISCUSSION

Plaintiff alleges that Ford Motor negligently and willfully violated the FCRA by continuing to report inaccurate information to credit reporting agencies and failing to conduct a reasonable investigation of her identity theft claim for several months. (Pl. Compl. ¶ 25.)

Ford Motor seeks summary judgment on all of Plaintiff's claims arguing that § 1681s-2(a) provides no private right of action, its investigations were reasonable in light of the information provided in the ACDV reports, and, even if they were not, Plaintiff has failed to show that she suffered any damages as a result of an FCRA violation. (ECF No. 39-8.)

Ford Motor argues that a private consumer, like Plaintiff, may not bring a cause of action for a violation of 15 U.S.C. § 1681s–2(a). (ECF No. 39-8 at 6.) Section 1681s–2(a) imposes a duty on furnishers, like Ford Motor, to provide accurate information. Ford Motor is correct that a private consumer cannot bring a claim for a violation of § 1681s–2(a). However, Plaintiff is not claiming relief under § 1681s-2(a). Plaintiff is pursuing relief under § 1681s-2(b). Section 1681s–2(b) imposes a duty on furnishers to conduct an investigation into the completeness and accuracy of the information it provides. This section does allow private consumers to pursue damages for harm caused by furnishers of credit information. *See SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010)); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008). Plaintiff only asserts that Ford Motor failed to adhere to the requirements of §1681s-2(a).

Ford Motor also argues that it conducted a reasonable investigation of Plaintiff's claim and, even if it failed to do so, Plaintiff suffered no damages as a result. We disagree and will address the investigation and damages separately.

### A. Investigation

The purpose of the FCRA is "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

Once a consumer reporting agency ("CRA"), such as Equifax, Trans Union, and Experian, notifies a credit furnisher of a disputed account, the furnisher's duty to investigate is triggered. 15 U.S.C. § 1681s–2(b). After receiving notice, the credit furnisher must: (1) conduct an investigation with respect to the disputed information; (2) review all relevant information received from the CRA; (3) report the results of the investigation to the CRA; and (4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information. *Id*. Furnishers are liable for either the negligent or willful failures to meet these requirements. *See* 15 U.S.C. §§ 1681o, 1681n.

The FCRA does not define the term "investigation." However, courts have held that any investigation into a credit dispute must be "reasonable." *See Van Veen v. Equifax Info.*, 844 F. Supp. 2d 599, 605 (E.D. Pa. 2012).

In the context of an investigation conducted by a CRA, the Third Circuit has held that "the reasonableness of a credit reporting agency's procedures is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question." *Cortez*,

617 F.3d at 709. The Third Circuit applies the same standard to investigations conducted by furnishers. *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014).

In this case, the record facts make clear that Ford Motor's investigation falls short of the Third Circuit's "beyond question" standard.

Ford Motor received two letters and three ACDV reports from three CRAs in reference to Plaintiff's dispute. Ford Motor's duties under § 1681s–2(b) commenced once it received the first ACDV report in February 2019. Ford Motor assigned a different analyst to investigate each report. Each report contained one consistent dispute code—"001: Not his/hers. Provide or confirm complete ID," but some reports contained more information than others. For example, the Trans Union report also contained code "111: Claims company will delete. Verify all Account Information," as well as information that Trans Union was "[u]nable to authenticate documentation dated 02 10 2017" (i.e., the credit application). Nevertheless, each analyst followed the same procedure and confirmed that the information provided in the ACDV reports was accurate by comparing Plaintiff's name, social security number, date of birth, and current address to its existing account information. Each analyst responded to each CRA well in advance of the FCRA response dates indicated on the reports.

Plaintiff argues that Ford Motor's blind application of its blanket policy for investigating disputes, regardless of the information a CRA provides in a report, goes directly to the heart of what is reasonable and creates an issue of fact for the jury. We agree.

The record evidence shows that Ford Motor invoked the same procedure in its response to each ACDV report. The content at issue in the reports, however, was *not* Plaintiff's name, social security number, date of birth, or current address, but instead Plaintiff's allegedly forged signature. In other words, Ford Motor's analysts only verified Plaintiff's existing account

information and nothing more. A jury could determine that under these circumstances and in light of the relevant information Ford Motor had received—the CRAs' initial correspondence, which outlined the nature of Plaintiff's dispute, and what was contained in the ACDV reports themselves—it should have realized that Plaintiff was not disputing anything other than her signature. Based on this, a jury could conclude that Ford Motor's internal policy itself is unreasonable and, consequently, the investigation it conducted in this case.

Conversely, a jury may determine that Plaintiff stalled Ford Motor's investigation by failing to promptly follow Ford Motor's instructions and provide the additional information it requested to properly file a claim for identity theft. These questions are for the jury to resolve, not the Court. Therefore, we conclude that whether Ford Motor's investigative procedure was reasonable is an issue of fact for the jury.

Furthermore, whether Ford Motor's actions were willful and rose to the level of "reckless disregard" of its duty under the statute or whether its conduct was "objectively unreasonable," is also a question for the jury. *See e.g., Hopkins v. I.C. Sys.*, No. 18-CV-2063, 2020 US Dist. LEXIS 88905, at *9 (E.D. Pa. May 19, 2020) (citing *Horton v. Trans Union, LLC*, No. 12-CV-2072, 2015 US Dist. LEXIS 29564, at *9 (E.D. Pa. March 9, 2015) (whether furnisher's actions were objectively unreasonable, rising to the degree of "reckless disregard" for its obligations under the FCRA, is a question for a jury.) Moreover, the fact that a furnisher routinely invokes "blanket policies" can support a finding of willfulness. *See Seamans*, 744 F.3d at 868 (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 620 (6th Cir. 2012) (remanding for a jury trial as to whether a furnisher's policy "prohibit[ing] its employees from performing anything more than a cursory confirmation of [the consumer's] status before reporting back to a CRA" constituted willful violation of the FCRA); *Van Veen*, 844 F.Supp.2d at 610 (denying defendant's motion for

summary judgment as to willfulness where furnisher's policies "never result in marking an account as disputed" and where the furnisher's analysts were allotted only "5 to 10 minutes" for investigations).

Plaintiff describes Ford Motor's policy as "cursory" and "incomplete." (Pl.'s Opp. 22.) Here, three different analysts followed the same investigative procedure, as Ford Motor's policy requires them to do, and each simply confirmed the existing information on Plaintiff's account. It appears that Ford Motor's policy resulted in duplicative and, on a few occasions, contradictory responses to Plaintiff. For example, despite Ford Motor's March 13, 2019 letter in which it acknowledged that Plaintiff was not responsible for the account, Ford Motor continued to request information from Plaintiff in separate letters. Moreover, Ford Motor continued to report the inaccurate account information to the CRAs. It was not until May 10, 2019 that the information was finally corrected and updated on Plaintiff's credit report. Whether this conduct is "objectively unreasonable," or it can be attributed to "reckless disregard" of its duty under the FCRA is a question for the jury to determine.

Because questions exist as to whether Ford Motor's investigative procedures were reasonable, we cannot find as a matter of law that Ford Motor complied with its duties under the statute and Ford Motor's motion for summary judgment must be denied.

### B. Damages

Ford Motor argues that Plaintiff has failed to show that she suffered damages as a result a FCRA violation, including punitive damages because she failed to establish a "willful" violation of the FCRA. Plaintiff claims she is entitled to damages resulting from Ford Motor's unreasonable investigations. She asserts that she suffered harm in the form of lost credit opportunities, emotional distress, and punitive damages for Ford Motor's willful conduct.

With regard to Plaintiff's lost credit opportunities, Plaintiff argues that she was unable to secure more favorable terms for her children's student loans. Plaintiff claims that she paid $3,238.23 in additional interest as a result of Ford Motor's failure to timely investigate her dispute. According to Ford Motor, because Plaintiff secured the loans for her children's education prior to it receiving notification of her dispute, any damages she suffered is not attributable to Ford Motor's failure to conduct a reasonable investigation. (ECF No. 39-8 at 17-19.) We disagree.

Plaintiff has presented sufficient evidence post-notification and post-correction that she qualified for more favorable loan terms from the same lender. Ford Motor acknowledged its error in March but did not validate her dispute until May. (Pl.'s Opp. Ex. W.) Whether these damages were directly caused by or linked to Ford Motor's failure to conduct a reasonable investigation of Plaintiff's claim remains a disputed question of fact. *See e.g.*, *Seamans*, 744 F.3d at 866 (holding factual issues existed as to whether drop in consumer's credit rating and associated loss of credit opportunities was attributable to unreasonable investigative and corrective procedures). Therefore, Ford Motor's motion on this issue will be denied, as well.

The FCRA permits recovery for emotional harm resulting from a defendant's inaccurate credit reporting. *See Cortez*, 617 F.3d at 719. Here, Plaintiff has presented enough evidence of emotional harm to survive summary judgment. Plaintiff describes physical stress, insomnia, fatigue, loss of function, as well as pain in her neck and back. (Pl.'s Opp. 16.) Even though the Third Circuit does not require corroborating testimony to show emotional harm, *see Cortez*, 617 F.3d at 720, Plaintiff submitted evidence from her treating doctor that identifies the treatment that she received and his conclusion that her condition, at least in part, resulted from her "ongoing truck loan problems." (Pl.'s Opp. Ex. X.) Whether that evidence is enough for

11

Plaintiff to prevail goes to the amount of weight the jury assigns to it, as well as its credibility. Therefore, Ford Motor's motion on this issue of damages is also denied.

Punitive damages are available to plaintiffs under § 1681n for Ford Motor's willful violations. *See Safeco Ins. Co. of America v. Burr*, 551 U.S 47, 69, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007); *Fuges v. Sw. Fin. Servs., Ltd.*, 707 F.3d 241, 248-49 (3d Cir. 2012). Whether Ford Motor's conduct rises to the level of a "willful" violation, which would entitle Plaintiff to an award of punitive damages, is another question for the jury to decide. Therefore, Ford Motor's motion on this issue of damages will be denied.

## IV. CONCLUSION

For these reasons, Ford Motor's Motion for Summary Judgment will be denied.

An appropriate Order follows.

                                          **BY THE COURT:**

                                          */s/ R. Barclay Surrick*
                                          **R. BARCLAY SURRICK, J.**