**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**
**(Philadelphia)**

| | |
|---|---|
| MICHELE M. BURNS<br><br>              Plaintiff,<br><br>   v.<br><br>FORD MOTOR CREDIT COMPANY, LLC, TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC and MICHAEL J. BURNS<br><br>              Defendants. | Civil Action No. 2:19-cv-01647-RBS<br><br>**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF ACTUAL DAMAGES** |

Defendant, Ford Motor Credit Company LLC ("Ford Credit") hereby moves this Court for an Order precluding plaintiff from offering any evidence, testimony, references to testimony or argument based upon a claim for actual damages.

Plaintiff seeks actual damages that allegedly accrued entirely before February 20, 2019. Such damages are not recoverable under the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq., because they predated the communication from a consumer reporting agency that triggered potential liability. And even if such damages were recoverable, Plaintiff has not provided any evidence that the Ford Credit account was a substantial factor in any injury or actual damages she may have incurred. As such, any evidence or testimony regarding potential actual damages are irrelevant, misleading, and inadmissible. Further, introduction of such evidence would be prejudicial to Ford Credit and serve only as a source of confusion for the trier of fact.

1

## I.    FACTUAL BACKGROUND

On or about February 10, 2017, Plaintiff's Michelle Burns' husband ("Plaintiff" or "Ms. Burns"), Michael Burns applied for and purchased a 2017 Ford Truck from John Kennedy Ford in Conshohocken, Pennsylvania. His wife, Ms. Burns was listed as co-applicant and co-buyer on the vehicle. The purchase was documented in the Vehicle Installment Contract, which was assigned to Ford Credit. Approximately, two years later, in February 2019, Plaintiff contacted Ford Credit both directly and indirectly through the credit reporting agencies to dispute the accuracy of the vehicle account appearing on her credit report. Plaintiff stated that she was the victim of identity theft, did not sign the contract at issue and should not be responsible for the debt. Ford Credit responded to the indirect disputes and verified the account information with the credit reporting agencies. Ford Credit responded to Plaintiff's direct dispute by requesting additional information with which to open an identity theft investigation. After receipt of the all of the requested information, Ford Credit conducted an independent identity theft investigation, validated Plaintiff's claim and removed the vehicle account from Plaintiff's credit report.

Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq ("FCRA"), and asserts that Ford Credit failed to conduct a reasonable investigation into Plaintiff's claims and that Ford Credit failed to adhere to the 30-day timeline as required under the FCRA. Plaintiff alleges claims of actual damages as well as damages for emotional distress and punitive damages.

## II.     ARGUMENT

### A.  THE COURT SHOULD EXCLUDE ANY EVIDENCE, TESTIMONY, ARGUMENT OF ANY POTENTIAL DAMAGES WHICH OCCURRED PRIOR TO FEBRUARY 20, 2019.

Pursuant to the Fair Credit Reporting Act, 15 U.S.C. §1681, et seq., liability against a furnisher of information does not begin to accrue until such time after the furnisher has been notified of potentially inaccurate or misleading information and has been given an opportunity to investigate and/or remediate that information. Here, Ford Credit's first notice of a credit dispute was made on February 20, 2019, by Equifax Information Services ("Equifax"). As such, any evidence regarding damages which may have accrued prior to February 20, 2019 of potential inaccuracies in Plaintiff's credit report are irrelevant and inadmissible.

Ford Credit is not a credit reporting agency, but rather is simply a furnisher of information. As such, Ford Credit is under no duty to conduct an investigation regarding a disputed entry on a consumer's credit report, pursuant to § 1681s-2(b), until it is notified of the dispute by a consumer reporting agency. See §1681s-2(b)(1); see also Krajewski v. Am. Honda Fin. Corp., 557 F. Supp. 2d 596 (E.D. Pa. 2008). This fact is crucial to a proper FCRA analysis because furnisher liability is *only* triggered after the occurrence of a specific set of communications between the consumer, CRAs and furnisher. Horton v. Trans Union, LLC, No. 12-2072, 2015 U.S. Dist. LEXIS 29564 (E.D. Pa. Mar. 9, 2015). Thus, any communication Plaintiff may have had with Ford Credit prior to receipt of an "Automated Consumer Dispute Verification" or "ACDV" report from one of the credit reporting agencies has no bearing on an FCRA analysis, nor for a claim of damages.[1] Additionally, Plaintiff's February 7, 2019 letter to Ford Credit also does not trigger FCRA

---

[1] ACDV forms are generated by credit reporting agencies upon receipt of a credit dispute from a consumer.

3

protections, as it was a direct communication with Ford Credit and not through a CRA, as required under the statute. Ford Credit's obligations under the FCRA were not triggered until it received the ACDV from Equifax on or about February 20, 2019.

Federal Rule of Evidence 402 prohibits the introduction of irrelevant evidence. Fed. R. Evid. 402. Additionally Rule 401 provides that evidence is relevant if: "a) it has a tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following; unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. See also, Sassaman v. Rushmore Loan Mgmt. Servs., LLC, 2016 U.S. Dist. LEXIS 173187, at *4-5 (M.D. Pa. Dec. 15, 2016).

Ms. Burns intends to provide evidence of damages such as: 1) garnering a higher interest rate on a parent plus loan on or around April/May 2018; 2) rejection of a line of credit from Amazon dating January 2018; 3) invoices from psychological treatment which she contends was, in part, due to her "emotional distress" from her dealings with Ford Credit, starting in November 2017; 4) invoices for chiropractic treatments for pre-existing back pain which she contends was, in part, exasperated due to stress from her dealings with the "truck issue" dating from January 2019. See **Exhibits A-D** attached.

As evidenced by the dates on Plaintiff's submitted documentation, many of these alleged damages occurred months or years prior to when Ford Credit's liability under the FCRA would have begun to accrue and prior to Ms. Burns herself being aware that there was a "truck loan" issue to begin with. In her deposition, Ms. Burns testified that she did not become aware of the "truck loan" issue until January 2019. (Burns deposition, pg. 10, ln 23).

4

Introduction of testimony and evidence of the type listed above has no bearing on Ford Credit's potential liability in this matter and would not provide an accurate picture of Plaintiff's claims for damages. As such, not only are they irrelevant, but their introduction would be unduly prejudicial to Ford Credit and serve only to mislead and confuse the jury. In Reed v. Experian Info. Solutions, Inc., the court excluded evidence of credit denial which occurred on March 14, 2002 because Plaintiff's first documented credit dispute occurred on March 29, 2002, stating that "A CRA cannot be held liable for a denial of credit before it has been put on notice that its report is in dispute." 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004); see also Casella v. Equifax Credit Info. Servs., 56 F.3d 469 (2d Cir. 1995) (CRA's could not have violated the FCRA before they knew of the dispute.), Dowell v. Wells Fargo Bank, N.A., 2007 U.S. Dist. LEXIS 108583 (S.D. Iowa Feb. 7, 2007) (denial of loans stemming from 2013 and 2014 cannot be used as evidence of damages when dispute to CRA and furnisher occurred in March 2015).

Here, the evidence is uncontroverted that Plaintiff first disputed the accuracy of her credit report on February 20, 2019, by notice to Equifax. Upon receipt of the ACDV report from Equifax, Ford Credit's responsibilities under the FCRA were triggered. Any credit denials, claims for high interest rates, invoices, claims for damages or the like which Plaintiff claims occurred prior to February 20, 2019, can have no bearing on Ford Credit's potential liability and cannot be the basis of Plaintiff's claims for damages as they are beyond the scope of the FCRA's provisions.

**B. THE COURT SHOULD EXCLUDE EVIDENCE, TESTIMONY OR ARGUMENT OF ACTUAL DAMAGES AS PLAINTIFF HAS NOT SHOWN THAT FORD CREDIT WAS A SUBSTANTIAL FACTOR IN HER ALLEGED INJURY.**

Under the FCRA, a plaintiff bears the burden of proving with a preponderance of the evidence a causal connection between the acts or omissions of the furnisher and their alleged damages. Howley v. Experian Info. Sols., Inc., 813 F. Supp. 2d 629, 636 (D.N.J. 2011). The Third Circuit

5

has held that a Plaintiff must provide evidence that the alleged inaccuracy was a "substantial factor" that brought about the injury. See Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir. 1996) (citing Restatement (Second) of Torts § 431(a)). The burden of causation remains with the Plaintiff at all times and never shifts to the Defendant. Philbin, 101 F. 3d. at 37.

### A. Plaintiff's claims of credit denial and higher interest rate

In addition to the fact that these claims originated outside of the parameters of liability as required by the FCRA because they accrued in 2018, Plaintiff has failed to point to any evidence linking the Ford Credit account listed on her credit report as a causal factor in receiving a higher interest rate on her Parent Plus application. Plaintiff's own speculation is simply not enough. Alves v. Verizon, 2010 U.S. Dist. LEXIS 75917, at *17-18 (D.N.J. July 27, 2010) ("Without personal knowledge or expert testimony, plaintiff's own affidavit that she received a higher interest rate due to a particular credit report is not sufficient to allow the recovery of damages resulting from the receipt of a higher interest rate."); see also McKinley v. CSC Credit Services, 2007 U.S. Dist. LEXIS 34528, at *11 (D. Minn. May 10, 2007) (granting summary judgment to defendant on this basis even though plaintiff was a "mortgage loan officer and as a result ha[d] a better understanding of the mortgage industry than others").

Plaintiff's credit report at the time of her Parent Plus loan application is replete with delinquent accounts with 30, 60, even 120 days past due on payments on accounts unrelated to the Ford Credit account. **See Exhibit E**. Plaintiff bears the burden of showing that despite the myriad of delinquencies present on her account, the addition of the Ford Credit account tipped the scales against her and she has been unable to produce any evidence to this end. Further, a credit denial letter from Equifax regarding her Parent Plus application dated March 2018, states clearly that Plaintiff was denied because of an "account in collections". There is no dispute that the Ford Credit

account at issue was ever in collections, therefore it cannot be the basis of that denial. **See Exhibit F**.

### B.  Plaintiff's emotional damages claim.

Similarly, Plaintiff cannot show a causal connection between Ford Credit and her claims for emotional damages. Plaintiff's claims that she suffered from "emotional distress" as a result of Ford Credit's alleged violation of the FCRA is buffered by documentation evidencing that she attended counseling and therapy sessions where she detailed the cause and circumstances of her "emotional distress" as well as records indicating that she suffered from back pain. However, Plaintiff's own testimony belies these claims and her "expert report" is unreliable and speculative.

First, Plaintiff's records show and Plaintiff testified that she began attending therapy in November 2017 in order to cope with her long, drawn out and contentious divorce. (Burns deposition, "Burns dep.", pg 35, 1-23).  This was long before Plaintiff became aware of the Ford Credit account appearing on her credit report and before she filed any formal credit disputes with the credit reporting agencies. This fact alone should exclude this evidence as outside the parameters of the FCRA. Second, Plaintiff's own deposition testimony and her therapy notes detail the myriad of difficulties and stressors that Plaintiff complained about to her therapist. These stressors include difficulties with her children, abuse suffered at the hands of her ex-husband, including her attempt to get a protective order against him, estrangement and subsequent death of her brother, her mother's illness, and financial worries among others. (Burns dep. Pg 58, 5-24). The one instance in which Plaintiff makes mention of a "truck loan issue" occurs at the end of 2019 in which Plaintiff states that she is working with her husband on the division of assets including a "forgery issue" ("Burns depo"). Again, Plaintiff bears the burden of showing that it was Ford Credit and not any of the other issues outlined above which led to her claim for emotional distress and she has failed to do so and the documentation provided runs contrary to this claim.

7

Plaintiff's own speculative testimony alone also cannot be used to support this claim. <u>Sassaman v. Rushmore Loan Mgmt. Servs., LLC</u>, No. 2016 U.S. Dist. LEXIS 173187 (M.D. Pa. Dec. 15, 2016) (Plaintiff not allowed to speculate on her damages, nor support her damages claim through self-serving testimony alone.)

**C. Plaintiff's back pain due to emotional distress**.

Plaintiff has also been unable to show a causal connection between Ford Credit and her stress induced back pain. Plaintiff claims that she suffered from back pain as a result of stress brought upon by her dealings with Ford Credit. However, Plaintiff's medical records, much like her therapy notes are replete with information which belies this claim.

Plaintiff stated in her deposition that she first began experiencing back pain eight (8) months prior to her first session with her chiropractor, which translates to April/May 2018, nine (9) months prior to her even being aware of the Ford Credit account on her credit report and her dispute with Ford Credit. (Burns dep., pg 55, 15-24).  Secondly, Plaintiff's medical records detail a history of fibromyalgia, surgical interventions and other stressors which may have contributed to this back pain, none of which are explored at all by her proposed expert and doctor. Plaintiff is unable to ascertain what caused her back pain and is especially unable to connect that pain to any "emotional distress" she may have suffered from any interactions with Ford Credit.

Plaintiff has failed to provide any evidence other than her own, unsubstantiated and unverified statements that she suffered from "emotional distress" as a result of any acts or omissions of Ford Credit and the documentation provided run averse to Plaintiff's claims. Introduction of Plaintiff's self-serving testimony and documentation would be prejudicial to Ford Credit and serve only to confuse the trier of fact as to the true nature of damages in this matter and should be precluded.

### III. CONCLUSION

For the reason's outlined above, Defendant hereby moves for an order *in limine* precluding any testimony, evidence, reference to testimony regarding Plaintiff's claims of damages.

Dated: September 8, 2021                                  **WONG FLEMING**

                                                          By:  *s/ Dafney Dubuisson Stokes*
                                                               Dafney Dubuisson Stokes