**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)**

| | |
|---|---|
| MICHELE M. BURNS<br><br>               Plaintiff,<br><br>   v.<br><br>FORD MOTOR CREDIT COMPANY, LLC, TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC and MICHAEL J. BURNS<br><br>               Defendants. | Civil Action No. 2:19-cv-01647-RBS<br><br>**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S MOTION IN LIMINE TO EXCLUDE THE REPORT AND TESTIMONY OF PLAINTIFF'S EXPERT DR. DAVID NADLER AND REQUEST FOR RULE 702 HEARING** |

Defendant, Ford Motor Credit Company LLC ("Ford Credit") hereby moves this Court for an Order precluding plaintiff from offering any testimony, references to testimony or argument based upon the testimony or opinions of Dr. David Nadler ("Dr. Nadler").

Dr. Nadler's expert report and opinion fail to comply with the requirements of Federal Rule of Evidence 702 and the subject matter of Dr. Nadler's testimony is irrelevant, not based on proper analysis and inadmissible. Introduction of the expert report and testimony would be unduly prejudicial pursuant to Federal Rules of Evidence 401 and 403.

### I.    FACTUAL BACKGROUND

Plaintiff's supplemental initial disclosures dated February 12, 2020 designated Dr. Nadler as an expert witness and stated that:

> Plaintiff's chiropractor-Dr. Nadler has knowledge regarding the physical manifestations of the stress and fatigue the claims at issue in this lawsuit have had on Plaintiff; the information Plaintiff confided to Dr. Nadler regarding same; the treatment Plaintiff received from Dr. Nadler as a result

1

of the emotional harm and damages; and the amount paid by Plaintiff for same.

Plaintiff served their expert CV and expert report on February 28, 2020. *See* **Exhibit 1**. In the report, Dr. Nadler offered an opinion regarding the nature and cause of Michelle Burns' ("Ms. Burns") pre-existing back pain and alleged exacerbation. In particular, he noted:

> Mrs. Burns presented to my office on January 22, 2019 for a comprehensive case history and physical examination.
>
> At the time of my initial examination, Mrs. Burns had complaints of headaches, dizziness, and persistent cervical and lumbar spine pain. right side greater than left, increased by sitting and standing. Pain was rated 7 on a scale from 0-10. She also had right upper extremity pain especially right shoulder pain, increased by lifting and getting dressed. Pain can vary from 3-7 on a scale from 0-10. Patient described pain as dull ache, warm burning and constant. *She stated the pain started over 15 years ago.* This patient states stressful events can be a major trigger. She has noticed many restrictions in her normal activities of daily living especially lying down and siting and at times she has difficulty with concentration.

Her further goes on to say:

> Michele has expressed to me that since the fall of 2018 she has been under tremendous stress regarding her divorce as well as financial obligations related to her divorce. She indicated that one issue causing her a great deal of stress was a truck loan her ex-husband obtained identifying her as one of the borrowers, without her knowledge. To fix the mistake, she was required to file a criminal complaint against her ex-husband, and has been trying to fix the error and her credit since the time she started treatment with me in January 2019. She said she did not find out about the loan until the fall of 2018, which was shortly before she presented to my office with complaints of low back and neck pain.

And finally, Dr. Nadler opines:

> In the case of Ms. Burns, I believe that the neck and low back symptoms for which I have been treating her since January 2019, are contributory to her stress, which has been caused by, at least in part, the ongoing truck loan problems noted above.

> It was shortly after being notified of the loan that she started experiencing the symptoms and sought treatment at my office. Further, she continued to require treatment for those stress-related symptoms throughout the time she has had to deal with the truck loan problem.

Nowhere in his report does Dr. Nadler enumerate the analytical or scientific process by which he came to his conclusions, nor does he detail his qualifications as an expert well versed to opine on this topic. Plaintiff intends to offer his opinion that Ms. Burns alleged "stress" and namely, the car truck loan led to her back pain and was the reason she sought chiropractic treatment. This is antithetical to both Dr. Nadler's stated credentials and Ms. Burns own testimony. As such, Dr. Nadler's expert report and opinion should be stricken as irrelevant, in contravention of Rule 702 and against the weight of the evidence already presented.

## II.  ARGUMENT

### A. THE COURT SHOULD EXCLUDE THE TESTIMONY OF DR. DAVID NADLER AND PRECLUDE DR. NADLER FROM TESTIFYING.

Federal Rule of Evidence 702 requires that a proffered expert witness must possess "specialized knowledge" and must be "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702; *see also* Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993). When faced with a proffer of expert testimony, a district court first must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." In re TMI Litig., 193 F.3d 613, 663 (3d Cir. 1999), *amended*, 199 F.3d 158 (3d Cir. 2000) (quoting Daubert, 509 U.S. at 592). A court must make a preliminary determination, prior to permitting an expert to testify, that:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

    (c)    the testimony is the product of reliable principles and methods; and

    (d)    the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The Third Circuit has described Rule 702 as focusing "on the 'trilogy of restrictions on expert testimony: qualification, reliability and fit.'" Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)); *see also* Oddi v. Ford Motor Corp., 234 F.3d 136, 146 (3rd Cir. 2000). The party offering the expert must prove each of these requirements by a preponderance of the evidence. In re TMI Litig., 193 F.3d at 663.

    **1.    DR. NADLER'S OPINIONS ARE UNRELIABLE AND SPECULATIVE AND NOT BASED ON SUFFICIENT FACTS OR DATA**

The Court must ensure that any and all scientific testimony is not only relevant but reliable. Daubert, 509 U.S. at 589. Daubert's reliability requirement "means that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (quoting Daubert, 509 U.S. at 590). Thus, when assessing reliability, an expert's conclusions must be examined to decide "'whether they could reliably flow from the facts known to the expert and the methodology used.'" In re TMI Litig., 193 F.3d at 666 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)).

The trial judge, acting as gatekeeper, must make a preliminary assessment of whether the reasoning or methodology underlying the proposed testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue. Daubert, 509 U.S. at 592; *see also* In re Paoli R.R. Yard, 35 F.3d at 732. In this Circuit, that assessment includes:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

In re Paoli R.R. Yard, 35 F.3d at 742 n.8. While this inquiry is a "flexible one," Daubert, 509 U.S. at 594, an expert who engages in a "haphazard, intuitive inquiry" using "little, if any, methodology beyond his own intuition," cannot offer conclusions reliable enough for admission. Oddi, 234 F.3d at 156-58.

Though the focus is on methodology, and not on the conclusions they generate, the two are related. Montgomery Cty. v. Microvote Corp., 320 F.3d 440, 448 (3d Cir. 2003). Because an expert's opinions must be based on "sufficient facts or data," FED. R. EVID. 702(b), where there is "too great an analytical gap between the data and the opinion proffered," such opinions fail under Rule 702 and *Daubert*. General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) ("nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert."); Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."). The Third Circuit has framed this requirement as one of relevance – that is, to be admissible, the expert testimony must help the trier of fact understand the evidence or determine a fact issue. In re TMI Litig., 193 F.3d at 665.

In this case, Dr. Nadler's entire "methodology" appears to be Ms. Burns' self-serving opinion as to the history and alleged cause of her back pain. Further the "facts" which form the basis of Dr. Nadler's opinion are limited and subjective. Ms. Burns' alleged statement that she is enduring some stressful times, including an "issue with a truck" is the entirety of Dr. Nadler's

5

analysis and from there, he inexplicably concludes that Ms. Burns' back pain must indeed be caused by "a truck loan" issue, which Ms. Burns identified as a stress stemming from her husband's forgery. In fact, neither Dr. Nadler nor Ms. Burns even tie this "stressor" with Ford Credit or any actions of Ford Credit. This "methodology" is grossly flawed and his resulting opinions are unreliable, entirely speculative, lack any basis in scientific fact and "use[] little, if any, methodology beyond his own intuition." Oddi, 234 F.3d at 158.

    a. **DR. NADLER FAILS TO CONDUCT AN INDEPENDENT ANALYSIS AND IMPROPERLY RELIES ON MS. BURNS' OWN ANALYSIS AS THE BASIS OF HIS ENTIRE OPINION.**

Dr. Nadler failed to engage in a scientific analysis of the cause and origin of Ms. Burns' renewed back pain. He also made no attempt to identify or eliminate any potential sources for the pain other than Ms. Burns' statement that she was dealing with some stress, namely stress caused by "a truck loan". Nor does Dr. Nadler even conclude, estimate or tie his conclusion to any actions of Ford Credit, but rather to Ms. Burns' ex-husband and his criminal actions. His failure to properly test and analyze Ms. Burns' complaints and seek a proper underlying cause has compromised the reliability of his findings which are integral to his overall conclusion.

Dr. Nadler generally determines the neck and low back pain which Ms. Burns has been experiencing are caused by stress which is, in part, related to "ongoing truck loan problems" as noted above. He further stated that it was after being notified of the "loan" that she started experiencing symptoms. This conclusion is based largely on statements made by Ms. Burns regarding the origins of her pain and its contributing factors. It does not appear that Dr. Nadler conducted any independent analysis of her "truck issue" aside from that statement. In fact, Dr. Nadler makes no mention of any other potential causes for Ms. Burns' pain which is clearly supported by her medical notes. Ms. Burns' medical notes indicate a history of fibromyalgia, surgical interventions, a mild stroke, and chronic degeneration disc disease, among others.

6

However, none of these underlying medical conditions are explored and/or ruled out as a cause for the pain and completely ignored by Dr. Nadler in his analysis.

Assuming arguendo that stress was the primary cause of Ms. Burns' back pain as stated, Dr. Nadler also fails to allow for the possibility of other potential stressors in Ms. Burns' life at the time of her treatment or prior. In fact, it is doubtful that Dr. Nadler was even aware of any other potential stressors in Ms. Burns' life, as none are mentioned in his report.

Indeed, Ms. Burns' own testimony at deposition contradicts Dr. Nadler's opinion as to the nature and onset of her renewed back pain. Ms. Burn's testified that she began experiencing back pain approximately eight (8) months prior to seeing Dr. Nadler for the first time in January 2019. (Burns deposition, "Burns dep.", pg 55, 15-24).  Ms. Burns further testified that prior to seeing Dr. Nadler for chronic back pain, she had begun to see a therapist at Catholic Clinical Consultants. Ms. Burns started seeing Dr. Michael Lanahan ("Dr. Lanahan") a licensed clinical counselor in November of 2017 to cope with her feelings surrounding her impending divorce. (Burns dep. Pg 35, 1-23).  During the course of her treatment with Dr. Lanahan, Ms. Burns discussed the various stressors in her life prior to seeking treatment for her back pain treatment; those stressors included the contentious and drawn out divorce from her husband, difficulties with her children, the estrangement and death of her brother, her mother's illness and subsequently becoming a caregiver to her mother, seeking a protective order against her husband, her husband's lies and criminal behavior and financial difficulties she was having as a result of her divorce. (Burns dep. Pg 58, 5-24.). Ms. Burns makes exactly one mention of stress which could possibly be linked to "a truck loan" issue, however, Ms. Burns testified to this as a "forgery case" involving her husband and equitable distribution of their properties. ("Burns dep. 52-53, 18-24, 1-3).

Based on his report and the testimony of Ms. Burns, it is clear that Dr. Nadler did not undertake a systematic analysis of potential sources for Ms. Burns' back pain, form or test

7

hypotheses regarding those potential sources, or rule out non-viable potential sources. He makes no reference to Ms. Burns' prior treatment with Dr. Lanahan, and moreover makes no mention of Ford Credit at all. As such, his report is merely speculative and fails to satisfy the requirements of Rule 702 and must be stricken.

    b. **BECAUSE DR. NADLER'S OPINIONS ARE NOT BASED ON SUFFICIENT FACTS AND A RELIABLE METHODOLOGY, THEY DO NOT FIT THE FACTS OF THIS CASE AND ARE OF NO USE TO THE TRIER OF FACT**

As to the "fit" requirement of Rule 702, the proffered testimony must assist the jury by providing it with relevant information necessary to reach a reasoned decision in the case. In re: Paoli R.R. Yard, 35 F.3d at 743. An expert opinion that is likely to mislead, rather than assist, the trier of fact does not comply with the "fit" requirement of Rule 702. Elcock v. Kmart Corp., 233 F.3d 734, 756 (3d Cir. 2000). Dr. Nadler's failure to base his opinion on facts and data as well, means in the end that there is "too great an analytical gap" between his method of analyzing the cause of Ms. Burns' back pain and his ultimate conclusion as to its cause.

Further, opinions based on speculation rather than detailed scientific analysis and are merely summary conclusions based on one person's interpretation of the facts would similarly be of no use the finder of fact and are inadmissible. Dr. Nadler's speculation regarding the root cause of Ms. Burn's back pain assumes facts which are in dispute in this matter, namely that Ms. Burns suffered from any damages which may be attributable to Ford Credit, and impermissibly serves to usurp the role of the jury as the ultimate fact finder in contravention of Rule 702. *See* Littlejohn v. Solar, 2020 U.S. Dist. LEXIS 86532, at *15 (D.N.J. May 17, 2020), *see also* Brown v. Vivint Solar, Inc., 2020 U.S. Dist. LEXIS 52590 (M.D. Fla. Mar. 26, 2020), Anderson v. Equifax Info. Servs., LLC, 2018 U.S. Dist. LEXIS 52939 (D. Kan. Mar. 29, 2018), Valenzuela v. Equifax Info. Servs. LLC, U.S. Dist. LEXIS 151064 (D. Ariz. Nov. 6, 2015).

### c. DR. NADLER'S OPINION AND TESTIMONY ARE IRRELEVANT GIVEN THE NATURE OF PLAINTIFF'S CLAIMS

Federal Rule of Evidence 402 prohibits the introduction of irrelevant evidence. Fed. R. Evid. 402. Additionally Rule 401 provides that evidence is relevant if: "a) it has a tendency to make a fact more or less probable than it would be without the evidence; and b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following; unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." Fed. R. Evid. 403. See also, Sassaman v. Rushmore Loan Mgmt. Servs., LLC, 2016 U.S. Dist. LEXIS 173187, at *4-5 (M.D. Pa. Dec. 15, 2016).

This matter is not one of personal injury but rather a matter involving allegations of potential statutory violations of the FCRA and the FCRA does not provide for damages stemming from personal injury or allegations of personal injury. Thus, even if the court were to deem Dr. Nadler qualified or deem his opinions to be sufficient under Rule 702, they are irrelevant as to the claim that the jury is being asked to consider.

Under the FCRA, a Plaintiff is entitled to recover actual damages, litigation costs and reasonable attorneys' fees or a statutory violation fee of at least $100 or as much as $1,000. 15 U.S.C.A. § 1681o and §1681n. Actual damages are identified as a specific injury to a Plaintiff's credit rating, credit worthiness or credit score. See Sassaman v. Rushmore Loan Mgmt. Servs., LLC, No. 1:15-cv-1487, 2016 U.S. Dist. LEXIS 173187, at *6 (M.D. Pa. Dec. 15, 2016). The type of injury of which Plaintiff is now complaining, namely, pain in her neck and back is not the type of injury contemplated by the FCRA and therefore not compensable. As such, any testimony regarding this back pain that Dr. Nadler may be able to contribute is irrelevant, unnecessary and

9

can lead to confusion within the jury regarding the claims they are being asked to consider. Further, introduction of this type of evidence is unduly prejudicial to Defendant Ford Credit as it is outside the scope of the FCRA and any liability therein. As such, Dr. Nadler's testimony should be precluded.

### III. CONCLUSION

Dr. David Nadler's reasoning and methodology fail to satisfy the factors set forth in the Federal Rules of Evidence and Daubert and Dr Nadler's testimony is irrelevant and unduly prejudicial. Therefore, the Court should preclude his report and his testimony in its entirety at trial.

Dated: September 8, 2021                                    **WONG FLEMING**

                                                            By: *s/ Dafney Dubuisson Stokes*
                                                                Dafney Dubuisson Stokes