UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
(Philadelphia)

| | |
|---|---|
| MICHELE M. BURNS<br><br>     Plaintiff,<br><br>  v.<br><br>FORD MOTOR CREDIT COMPANY, LLC, TRANS UNION, LLC, EQUIFAX INFORMATION SERVICES, LLC and MICHAEL J. BURNS<br><br>     Defendants. | Civil Action No. 2:19-cv-01647-RBS<br><br>**DEFENDANT FORD MOTOR CREDIT COMPANY LLC'S MOTION IN LIMINE TO PRECLUDE ARGUMENT, TESTIMONY OR REFERENCES TO TESTIMONY PERTAINING TO PUNITIVE DAMAGES** |

**PRELIMINARY STATEMENT**

This is an action brought by Plaintiff Michele M. Burns against Defendant Ford Motor Credit Company LLC ("Ford Credit"), Equifax Information Services, TransUnion, LLC and Michael Burns, alleging negligent and willful violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, et. seq. ("FCRA") by reporting inaccurate information on Plaintiff's credit report and failing to properly investigate Plaintiff's dispute of the alleged inaccurate information. Pursuant to the Court's Individual Practices, Ford Credit moves *in limine* to preclude the introduction of any argument, testimony or references to testimony or last-minute evidence pertaining to Plaintiff's claim for punitive damages because Plaintiff has failed to produce any admissible evidence to justify an award of punitive damages.

1

## BACKGROUND

On or about February 10, 2017, Michael Burns ("Mr. Burns") applied for and purchased a 2017 Ford Truck from John Kennedy Ford in Conshohocken, Pennsylvania. (Declaration of Jennifer Scholl, "Scholl Decl., ¶ 5). His wife, Michele Burns ("Ms. Burns" or "Plaintiff") was listed as co-applicant and co-buyer on the vehicle. (Scholl Decl., ¶ 5). The purchase was documented in the Vehicle Installment Contract, which was assigned to Ford Credit. (Scholl Decl., ¶ 6).

Approximately two years later, on or about February 11, 2019, Ford Credit received two identical letters from Ms. Burns, in which she indicated that she did not sign for the loan or application for the vehicle and that the account was not her responsibility. (Scholl Decl., ¶ 7). In response, Ms. Burns was provided with information in which to file a proper ID theft claim. (Scholl Decl., ¶ 8).

Shortly thereafter, Ford Credit received and responded to an Automated Credit Dispute Verification ("ACDV"[1]) report from Equifax Information Services, LLC ("Equifax"), TransUnion, LLC ("TransUnion) and Experian, Plc ("Experian") (together, the "credit reporting agencies"). Upon receipt of the ACDV reports, Ford Credit conducted a review and investigation of Ms. Burns' Ford Credit account and verified the information therein. (Scholl Decl., ¶¶ 10-13).

On or about March 26, 2019, a completed ID Theft Affidavit was received from Ms. Burns, however, it was missing a police report. A request for the missing documentation was sent back to Ms. Burns and she was given until April 9th in which to provide the requested information. (Scholl Decl., ¶ 18). The requested information was not received by the April 9, 2019 deadline and the dispute claim was closed within Ford Credit. (Scholl Decl., ¶ 19). On or about April 2, 2019, Ford

---

[1] These forms are generated by credit reporting agencies upon receipt of a credit dispute from a consumer.

Credit received correspondence from Ms. Burns in which she stated that she believed that the police report number indicated in the ID Theft Affidavit should be enough, but nevertheless she is awaiting receipt of a police report and will forward it along as soon as she receives it. (Scholl Decl., 20).  On or about April 22, 2019, Ms. Burns faxed in another copy of her driver's license as well a denial of Right to Know documentation from the Springfield Police Department and a copy of the Montgomery County criminal docket evidencing criminal charges filed against Mr. Burns for forgery.  The ID theft claim was re-opened with Ford Credit for investigation. (Scholl Decl., ¶ 21). On or about May 8, 2019, Ford Credit validated the identity theft claim and submitted information to the credit reporting agencies and requested that they delete the Ford Credit tradeline from Ms. Burns' credit reports. The deletion request was processed and made effective on or about May 10, 2019. (Scholl Decl., ¶ 25).

     Plaintiff commenced this action by filing a Complaint on April 17, 2019 against Defendants Ford Credit, TransUnion, Equifax and Michael J. Burns. Ford Credit filed its Answer and Affirmative Defenses to the Complaint on October 24, 2019.  Thereafter, the parties engaged in discovery.  Plaintiff served written discovery on Ford Credit and took the deposition of three Ford Credit Employees. Ford Credit also served written discovery on Plaintiff and took her deposition.  Ford Credit subsequent filed a Motion for Summary Judgment on November 20, 2020.  Plaintiff opposed. The court denied Ford Credit's Summary Judgment Motion on May 28, 2021 finding there were genuine issues of material facts for the fact finder and trial is scheduled for October 4, 2021.

**ARGUMENT**

**THE COURT SHOULD PRECLUDE ANY EVIDENCE IN SUPPORT OF PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES**

Evidence, testimony, questions, or arguments as to Plaintiff's claim for punitive damages should be precluded at trial because Plaintiff has not and cannot produce any admissible evidence in support of her claims.

The FCRA permits an award of punitive damages against furnishers of information for "willful" violations of the statute. 15 U.S.C. §1681n(a). The Supreme Court has held that willful violations of the FCRA are assessed for "reckless disregard." Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 60 (2007). "[A] company subject to the FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Cortez v. Trans Union, LLC, 617 F.3d 688, 721 (3d Cir. 2010) (citing Safeco, 551 U.S. at 69). The Third Circuit adopted this standard in Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241 (3d Cir. 2012).

This standard requires the Court to evaluate the reasonableness of the procedure and/or behavior of the furnisher at the time of the dispute as a threshold matter. Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241 (3d Cir. 2012) (defendants found not liable absent evidence of a reckless approach to FCRA compliance), see also Birmingham v. Experian Info. Sols., Inc., 633 F.3d 1006 (10th Cir. 2011). Similarly, where the policy and procedures followed by the defendant are reasonable on its face, the court has not found there to be a willful violation of the FCRA. See Id., see also Serfess v. Equifax Credit Info. Servs., 2014 U.S. Dist. LEXIS 120138 (D.N.J. Aug. 28, 2014) (ACDV process is reasonable on its face). Alternatively, "evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would

4

provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." Dixon-Rollins v. Experian Info. Sols., Inc., 753 F. Supp. 2d 452, 465 (E.D. Pa. 2010); see also Saunders v. Equifax Info. Servs., L.L.C., 469 F. Supp. 2d 343 (E.D. Va. 2007) (defendant engaged in repeated instances of "reckless" behavior regarding the Plaintiff's account); Fasusi v. Wash. Motorcars, Inc., 2018 U.S. Dist. LEXIS 174060 (E.D. Va. Aug. 31, 2018) (Defendant failed to have any policies or procedures in place to properly handle Plaintiff's dispute).

None of the allegations set out in Plaintiff's Complaint rises to the level of "recklessness" and disregard for the law that would entail an award for punitive damages as outlined above. Rather, Ford Credit followed the clear and reasonable policies and procedures in place at the time and the accepted standards in the industry for furnishers of information. Plaintiff has been unable to point to any evidence whatsoever to the contrary.

### A. FORD CREDIT'S INVESTIGATION INTO PLAINTIFF'S INDIRECT DISPUTE WAS REASONABLE AND WITHIN THE PARAMETERS OF THE FCRA

The FCRA requires that furnisher of information such as Ford Credit to conduct a reasonable investigation into consumer disputes filed with the credit reporting agencies. See 15 U.S.C.§1681s-2(b). More specifically, when a furnisher receives notice from a CRA that a consumer disputes the completeness or accuracy of information the furnisher provided to the CRA, the furnisher must investigate the disputed information, review all relevant information the CRA provided, and report the results of its investigation to the CRA. 15 U.S.C. §1681s-2(b)(1)(A)-(C).

In this case, the record is clear that Ford Credit's investigations of the information provided in the ACDV reports were reasonable. The ACDV reports from the credit reporting agencies contained a dispute code "001: Not his/hers. Provide or confirm complete ID." (Scholl Decl., ¶¶ 10-13). After receiving the ACDV, Ford Credit followed its procedures for investigating ACDVs

5

in a timely manner. First, a Ford Credit ACDV analyst reviewed Ford Credit's system to ascertain what information was reported regarding the customer's account. (Scholl Decl., ¶ 14). Next, the analyst accessed Ford Credit's databases to compare the information provided to the CRA with its own records. (Scholl Decl., ¶ 14). Since the ACDV requested confirmation of identity, pursuant to Ford Credit's internal procedures, Ford Credit would compare the names and addresses on the account, and the social security number provided with what was reported to the CRA, to determine whether it was the correct customer the contract. In this case, the information matched, as such this dispute was verified. (Scholl Decl., ¶¶ 14, 15).

Ford Credit later received a second ACDV from Equifax, on or about April 24, 2019, with dispute code "103: Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." Attached to the ACDV was an ID Theft Affidavit completed by Plaintiff. (Scholl Decl., ¶ 22). As before, Ford Credit promptly responded and verified that the information provided in the ACDV report was accurate pursuant to its records. However, since the ACDV report indicated possible identify theft or fraud, Ms. Burns was mailed instructions on for opening an official ID theft investigation. Importantly, identity theft investigations are conducted by trained individuals in a separate department within Ford Credit. (Scholl Decl., ¶ 24). However, by the time Ford Credit received the TransUnion ACDV, an ID Theft investigation was open and active with the Ford Credit Victim's Assistance team which conducted ID theft investigations. A compliance dispute code of XB had already been added to Plaintiff's account and transmitted to the credit reporting agencies, which indicated that the account was in dispute. Based upon the information provided to Ford Credit on the above ACDV reports, Ford Credit conducted reasonable investigations of Plaintiff's disputes. Plaintiff has been unable to and will be unable to provide any evidence to the contrary, other than her own subjective belief that it was unreasonable because

Ford Credit did not immediately remove the account from her credit reporting agency upon her asking.

The ACDV process described above has been found to be reasonable on its face. <u>Serfess v. Equifax Credit Info. Servs.</u>, 2014 U.S. Dist. LEXIS 120138 (D.N.J. Aug. 28, 2014). Thus, guidance in this matter was available and followed closely by Ford Credit in order to stay within the bounds of the law and the accepted standards in the industry. The standard for punitive damages is a high one, reserved for the most egregious behavior and behavior that demonstrates not only ignorance of the law but carelessness towards it. Plaintiff has not and cannot provide any evidence, testimony or the like which demonstrates that Ford Credit was acting outside of the scope of the FCRA, case law or accepted standards throughout the investigation process. As such, punitive damages should be unavailable as a remedy.

### B. FORD CREDIT'S INVESTIGATION INTO PLAINTIFF'S ID THEFT INVESTIGATION WAS REASONABLE AND WITHIN THE PARAMETERS OF THE FCRA

Ford Credit's identity theft investigation was thorough and reasonable as required by the FCRA and did not show a reckless disregard of the statue and current standards. Upon receipt of the completed ID Theft Affidavit, Ms. Burns' file was transferred to the Victim Analyst Department which handles identity theft investigations. Upon transfer, the file would be placed with a Research Analyst. (Deposition of Dorothy Oliver, "Oliver Dep.," 22:1-15). The research analyst's responsibility is to confirm that Ford Credit received the necessary documentation to begin an identity theft investigation to aid in this, the research analyst kept a checklist of the information requested from Ford Credit and whether that information had been received. (Oliver Dep., 22:1-15). Upon receipt of all necessary information, the research analyst would complete his or her review and the matter would then be assigned to a Victim Assistance Analyst, in order to actually conduct the Investigation. (Oliver Dep., 22:1-15).

Ms. Burns' file was assigned to a Victim Assistance Analyst ("VAA") on April 22, 2019. On the first day this matter was assigned to her and pursuant to Ford Credit's policies and procedures, the VAA requested the "deal jacket" from the dealership where the vehicle was sold. (Oliver Dep., 23:14-19). The VAA would also contact the dealer through their business development office to obtain additional information regarding the circumstances surrounding the purchase of the vehicle. (Oliver Dep. 54:1-55) Thereafter, the VAA reviewed all communications between Ms. Burns and Ford Credit and all related account information in the Ford Credit system. (Oliver Dep., 27:6-21). In addition, the VAA conducted an internet search of Michael Burns and the VAA's research and findings were memorialized in her summary. (Oliver Dep., 27:6-21). In her summary, the VAA detailed that although the name, address, social security numbers and dates of birth on the loan application matched both Ford Credit's accounts and the deal jacket, there was evidence that Ms. Burns had been the victim of an ID Theft. The VAA noted that: 1) the driver's license allegedly used for the purchase of the vehicle in 2017, was issued in March of 2018; 2) the signatures on the ID Theft Affidavit and the driver's license did not appear to match those on the credit application; 3) the deal offering showed that Mr. Burns was initially denied credit until his wife, Ms. Burns was included in the application; 4) suspicious behavior on the part of the dealership, where it was revealed that Mr. Burns knew with one of the dealers and he was allowed to refinance the vehicle with a different lender removing Ms. Burns as co-buyer; and 5) the dealership would neither confirm nor deny whether Ms. Burns was present at the time of the purchase of the vehicle. In light of this investigation and the information gleaned, the VAA made the recommendation to substantiate Ms. Burns' claim of identity theft. (Oliver Dep., 39:6-25).

Other than her own statement and belief that Ford Credit's handing of her account and ID theft investigation was unreasonable, Plaintiff has not provided any substantiating evidence, let

alone any evidence that Ford Credit's actions rise to the level of reckless and willful conduct that was justify an award of punitive damages. Plaintiff bears the burden of showing that Ford Credit acted not only in contravention of the FCRA but also "show that the [Ford Credit] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless [of the FCRA]." Cortez v. Trans Union, LLC, 617 F.3d 688, 721 (3d Cir. 2010) (citing Safeco, 551 U.S. at 69). Plaintiff simply has not provided any evidence thus far that would support this standard and she cannot do so at trial. Therefore, Plaintiff's request for punitive damages is far reaching at best and should be barred, and any evidence or claims for such damages should be excluded.

### C. PLAINTIFF HAS PROVIDED NO EVIDENCE THAT FORD CREDIT ENGAGED IN WILLFUL CONDUCT.

To show "willful" noncompliance with the FCRA, a consumer must show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of others" but need not show "malice or evil motive. Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997). The defendant's actions must be in the same order as willful concealments or misrepresentations. Id. Here, Plaintiff bears the burden of showing that Ford Credit adopted its investigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or to be in reckless disregard of those rights in order for punitive damages to be justified. See Id. Further, A company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage. Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 248 (3d Cir. 2012). Subjective intent or bad faith is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question." Id.

Ford Credit conducted several investigations into the ACDV requests as required by the FCRA (15 U.S.C. §1681s-2(b)), marked the account as disputed, responded to the credit reporting agencies within the statutory limit (15 U.S.C. §1681s-2(b)(1)(A)-(C) and 15 U.S.C. §1681s-2(b)(2)), opened an ID theft investigation and upon receipt of all necessary documents, conducted and completed the ID theft investigation (15 U.S.C. §1681s-2(a)(8)), verified Plaintiff's claim, and deleted the erroneous information from Plaintiff's credit report (15 U.S.C. §1681s-2(b)(1)(E)). At all times Ford Credit was acting within the parameters set by the FCRA and accompanying interpretations of the statute. Plaintiff has been and continues to be unable to point to any evidence, testimony or data which suggests otherwise. Thus, any testimony or argument in support of Plaintiff's claim for punitive damages must be precluded at trial.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant's motion *in limine*, and preclude the introduction of any and all argument, testimony or references to testimony in support of Plaintiff's claim for punitive damages against Defendant Ford Motor Credit Company LLC.


Dated: September 8, 2021                             **WONG FLEMING**

                                                   By:  *s/ Dafney Dubuisson Stokes*
                                                        Dafney Dubuisson Stokes